NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1350

STEVEN P. ROSENTHAL, trustee,[1] & another[2]

vs.

PLANNING BOARD OF MARBLEHEAD & others[3]
(and a consolidated case[4]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In these consolidated zoning cases, the parties limited the principal issue at trial to whether parcels of property owned or controlled by Stephen R. Petersen and Gillian Lieberman on

_____

[1] Of the Joan F. Rosenthal Revocable Trust.

[2] Joan F. Rosenthal, trustee of the Joan F. Rosenthal Revocable Trust. Michael Murphy and Diane P. Phillips, as trustees of the Ten Bartlett Street Condominium Trust, were plaintiffs in the Land Court, but are not parties to this appeal.

[3] Stephen R. Petersen and Gillian Lieberman.

[4] Steven P. Rosenthal, trustee of the Joan F. Rosenthal Revocable Trust, & another vs. Zoning Board of Appeals of Marblehead & others. Michael Murphy and Diane P. Phillips, trustees of the Ten Bartlett Street Condominium Trust, were plaintiffs in the Land Court, but are not parties to this appeal.

Bartlett Court in Marblehead should be considered to have merged for the purposes of zoning because of inadequate frontage for separate lots. After a trial, a judge of the Land Court concluded that the properties have not merged; neighbors Joan F. Rosenthal and Steven P. Rosenthal, as trustees of the Joan F. Rosenthal Revocable Trust (trustees), appeal. We affirm.

Background. The Rosenthals, and Petersen and Lieberman, are both married couples who separately own in varying capacities several parcels of property situated on opposite sides of a private way, Bartlett Court, and adjacent to or near the Atlantic Ocean in Marblehead.[5] We are primarily interested in lot B (also known as 9 Bartlett Court); lot C (also known as 11 Bartlett Court); and lot 1 (which the judge determined is an extension of Bartlett Court that has existed since the early 1900s), all as shown on a plan dated December 14, 2009, and endorsed by the planning board as approval under the subdivision control law not required (ANR) on February 9, 2010 (2010 ANR plan). The 2010 ANR plan depicts lot B and lot C as sharing a

_____

[5] We need not detail the exact division of ownership of Petersen's and Lieberman's parcels because, while the parcels may be in separate legal ownership, the parties have stipulated that at all relevant times, all of their parcels have been under "common control," such that Petersen and Lieberman do not rely on their separate ownership of individual parcels to argue that the concept of merger does not apply. Thus, we refer to Petersen and Lieberman, collectively, as the owners of the relevant parcels.

2

common boundary; lot C is improved with a large home and lot B is improved with a pool house and a pool. Lot B is shown on the 2010 ANR plan as fronting on Bartlett Court for one hundred feet and lot C is shown as fronting on Bartlett Court and on "Lot 1" -- the Bartlett Court extension -- for a total distance of 166.57 feet. The deed from Petersen's and Lieberman's predecessors refers to the 2010 ANR plan.

The trustees own the property fronting on the opposite side of Bartlett Court and lot 1, known as 40 Bartlett Court, also shown on the 2010 ANR plan.[6] It, too, is improved with a large home and garage.

1. Bartlett Court and development of properties. The judge found that Bartlett Court was first shown on a plan in 1906 and by 1954 the trustees' home and the home on 11 Bartlett Court now owned by Petersen existed at the end of the way. For decades, Bartlett Court has been paved starting from its intersection with Spray Avenue and extending toward the ocean;

---

[6] Indeed, the judge noted that if the extension does not provide sufficient frontage, the trustees' property would also become nonconforming with frontage of less than the required one hundred feet on Bartlett Court. In their reply brief, they contend that the assertion of adequate frontage in a special permit application was mere error. Here, they attach a more sinister motive for the same explanation as to the error on the 2021 ANR plan. While we decide the case on other grounds, we note that it may well be that "the plaintiffs' position is so intrinsically inequitable that it should not prevail." Hogan v. Hayes, 19 Mass. App. Ct. 399, 404 (1985).

an unpaved portion continued toward the ocean -- the length of which changed from time to time. By 1966, a gate had been installed near the end of the paved section, but the unpaved section continued past the gate. The judge found that Bartlett Court extends from Spray Avenue for 221.4 feet to a gate, beyond which mesh pavers[7] extend on the roadway for an additional distance of 59.5 feet. We refer to the section of Bartlett Court beyond the gate as Bartlett Court extension or the extension, and as noted above, the judge found that lot 1 on the 2010 ANR plan is the Bartlett Court extension.[8]

In 2016, Petersen and Lieberman obtained a building permit allowing them to improve a pool house on lot B to create a single-family residence, which Petersen and Lieberman since have used as a guest house. So far as the record reveals, no issues as to lot B's or lot C's frontage were raised at that time.

In 2021, the planning board endorsed a newly drafted ANR plan submitted by Peterson and Lieberman that changed the common boundary of lot B and lot C to eliminate a side-yard

---

[7] The judge found that the mesh pavers are designed to "accommodate heavy vehicle loadings or passenger type of loadings in areas where there's a desire to minimize impervious area."

[8] Lot 1 first appeared on the 2010 ANR plan which was created by Lieberman's and Petersen's predecessor. Lot 1 serves as a portion of the boundary of lot 2 on the plan; lot 2, as noted on the 2010 ANR plan, was later transferred to Steven P. Rosenthal, as trustee of 40 Bartlett Street Realty Trust.

nonconformity on lot B but did not alter the frontage for either lot (2021 ANR plan). Lot B was relabeled lot B2 (9 Bartlett Court) and lot C was relabeled lot C1 (11 Bartlett Court). Nonetheless, the 2021 ANR plan, on its face, shows lot B2 with frontage that complies with the Marblehead zoning bylaw minimum requirement of one hundred feet. However, the Bartlett Court extension is no longer separately labeled as lot 1, but is shown on the 2021 ANR plan as part of lot C1 -- 11 Bartlett Court. Thus, it is not clear from the 2021 ANR plan that Bartlett Court extension continues on lot C1.

Turning to the project at issue before us, in 2021, Petersen and Lieberman applied to the planning board for a site plan special permit that would allow them to add a second-floor addition to the existing residential structure on lot B2 (9 Bartlett Court) as depicted on the 2021 ANR plan. It is undisputed that the town prohibits more than one principal building on a lot, and that the town requires each lot in the zoning district in which the properties are located to have one hundred feet of frontage on a street. The trustees challenged the application, contending that lot C1 has insufficient frontage as shown on the 2021 ANR plan and, therefore, lots B2 and C1 had merged for zoning purposes. They further contended that where a large home already exists on lot C1 and the town

5

zoning bylaw prohibits more than one primary structure on a lot, a second primary structure on lot B2 is prohibited.[9]

2. <u>Local decisions and Land Court decisions</u>.  The planning board issued a decision noting that it heard comments regarding "frontage and dimensional issues," but concluded that 9 Bartlett Court had sufficient frontage and that the plan met the zoning bylaw's requirements for a site plan special permit. Thereafter, the trustees filed an appeal in the Land Court pursuant to G. L. c. 40A, § 17, and also submitted a request to the building commissioner to enforce the bylaw.  The building commissioner issued a decision concluding that both 9 Bartlett Court and 11 Bartlett Court have conforming frontage and that the parcels had not merged despite their common ownership.  The zoning board of appeals affirmed the building commissioner's decision.  The board found the paved portion of Bartlett Court provides 43.2 feet of frontage for 11 Bartlett Court and that Bartlett Court extension provides eighty-five feet of frontage, of which fifty-three feet[10] have been improved with mesh pavers.

_____

[9] The judge and the parties seem to accept as true that the proposed changes to the "guest house" on lot B would create two principal structures when considered with the home on lot C1. Finding that the lots had not merged, the board of appeals did not reach that issue and it has not been raised on appeal.

[10] The judge found that 59.5 feet were improved with mesh pavers while the board found that fifty-three feet had been improved with pavers and thirty-two feet were comprised of short

6

The board of appeals further found that the portions of Bartlett Court providing frontage to 11 Bartlett Court have sufficient width, suitable grades, and adequate construction for the needs of the abutting land.  Finally, the board of appeals found that "[t]here has been no merger of the two lots despite any common ownership"; the presence of a "gate is not relevant to zoning compliance"; and the 2021 ANR plan "did not operate to eliminate any amount of frontage used by 11 Bartlett, and did not render 11 Bartlett out of compliance with the frontage requirements of the Bylaw."

The trustees again appealed to the Land Court from the decision of the board of appeals and both appeals were consolidated in the Land Court.  After a trial, which included a view, the Land Court judge concluded that Bartlett Court, including the extension, constitutes a street as defined in the local zoning bylaw as it was in existence when the subdivision control law was adopted, that both 9 Bartlett Court and 11 Bartlett Court have at least one hundred feet of frontage on a street, and that the lots had not merged.  The judge considered extrinsic evidence including historic and current maps and plans, along with testimony indicating that Bartlett Court extension has long been in existence, was in existence when the

grass.  The difference is not material to the arguments on appeal.

7

subdivision control law was adopted in Marblehead in 1997, has been improved with mesh pavers abutting lot C, and is adequate for service to the single-family home on lot C. Further, the judge implicitly credited evidence by the drafter of the 2021 ANR plan explaining her error in failing to show the Bartlett Court extension on the 2021 ANR plan. The parties having conceded that there was no other legal infirmity, the judge affirmed the planning board's decision to grant the special permit and the board of appeals' decision affirming the building commissioner's denial of the trustees' zoning enforcement request. The judge rejected the trustees' argument that the failure to depict the full length of Bartlett Court on the 2021 ANR plan compelled the conclusion that the lots had merged.

Discussion. 1. Standard of review. On appellate review of a local board's decision to grant a special permit, "the judge's findings of fact will not be set aside unless they are clearly erroneous or there is no evidence to support them. We review the judge's determinations of law, including interpretations of zoning bylaws, de novo" (citation omitted). Fish v. Accidental Auto Body, Inc., 95 Mass. App. Ct. 355, 362 (2019). The same is true for appellate review of the judge's decision reviewing the board of appeals' decision upholding the building commissioner's zoning enforcement decision. See Drummey v. Falmouth, 87 Mass. App. Ct. 127, 128 (2015) (on

8

appeal of Superior Court's decision reviewing building commissioner's decision, we review judge's determinations of law de novo); Oakham Sand & Gravel Corp. v. Oakham, 54 Mass. App. Ct. 80, 84 (2002) (on appeal of board of appeals' decision affirming town's zoning enforcement officer's cease and desist order, our duty is to accept trial judge's findings of fact unless clearly erroneous). "If the [special permit granting authority's] decision is supported by the facts found by the judge, it 'may be disturbed only if it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary'" (citation omitted). Fish, supra. Moreover, to the extent that either board's decision is based on the local bylaw, "[a] reasonable interpretation of its own zoning by-law by a local board . . . is entitled to deference." Livoli v. Board of Appeals of Southborough, 42 Mass. App. Ct. 921, 922 (1997).

2. Merger doctrine. "It is well settled that '[a]djacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize nonconformities.'" Carabetta v. Board of Appeals of Truro, 73 Mass. App. Ct. 266, 268 (2008), quoting Preston v. Board of Appeals of Hull, 51 Mass. App. Ct. 236, 238 (2001). Known as the "merger doctrine," in answering the question whether it applies, courts ignore "the manner in which the components of a total given area have been assembled and concentrates instead on the question of whether

9

the sum of the components meets the requirements of the by-law" (citation omitted). Carabetta, supra at 270. Thus, the determination of whether the merger doctrine applies requires consideration of what actually exists on the ground as well as other pertinent circumstances, such as the historical use of the road and current plans, among other considerations. "As the moniker suggests, an ANR endorsement expresses no view of town authorities as to the zoning compliance of any lot proposed by a subdivision plan." Bruno v. Zoning Bd. of Appeals of Tisbury, 93 Mass. App. Ct. 48, 50 n.4 (2018). See Palitz v. Zoning Bd. of Appeals of Tisbury, 470 Mass. 795, 807 (2015), quoting Cornell v. Board of Appeals of Dracut, 453 Mass. 888, 892 (2009) ("ANR indorsement serves merely to permit the plan to be recorded . . . and is not an attestation of compliance with zoning requirements").

Here, based on findings of fact that largely have not been challenged, the judge concluded that lot 1 as depicted on the 2010 ANR plan is an extension of Bartlett Court and constitutes a "street" for purposes of the local zoning bylaw because it was in existence on the date the subdivision control law was adopted. The judge further concluded that Bartlett Court and its extension, lot 1, provides at least one hundred feet of sufficient frontage for both lots B2 and C1. The trustees insist, however, that because Bartlett Court extension is not

10

labeled as a "street"[11] on the 2021 ANR plan, neither it nor lot 1 can serve as frontage[12] for lot C1 (11 Bartlett Court) -- that it cannot be both a "lot"[13] and a "street" as those terms are defined in the town's zoning bylaw.[14]

At the outset, we pause to note that this is not an appeal challenging whether the planning board properly endorsed the 2021 ANR plan or any other ANR plan;[15] it is an appeal from a

---

[11] "Street" is defined in the bylaw, as relevant here, as a

"way in existence when the Subdivision Control Law became effective, having sufficient width and suitable grades, and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon."

[12] The term "Lot frontage" is defined as "[t]hat part of a lot which has an uninterrupted parcel boundary line abutting on a constructed street."

[13] "Lot" is defined as "[a] single area of land defined by metes, bounds, or boundary lines in a duly recorded deed or shown on a duly recorded plan."

[14] The trustees do not cite to any authority in support of their contention that a street cannot also be a lot. Indeed, we note that with regard to registered land, "[n]o new certificate of title may issue for the fee in a street unless a plan has been filed showing the street as a lot." Guideline 24 of the Land Court Guidelines on Registered Land (Feb. 27, 2009).

[15] In their reply brief, the trustees take the somewhat conflicting positions that an ANR plan is authoritative with regard to frontage, see Perry v. Planning Bd. of Nantucket, 15 Mass. App. Ct. 144, 156 (1983), but notwithstanding that this is not an appeal from the ANR endorsement of the 2021 plan, ask us to ignore the inherent determination that all of the lots shown on the 2021 ANR plan have adequate frontage on a street.

11

special permit granted for 9 Bartlett Court (lot B2) and the related zoning enforcement decision. On appeal, the trustees do not challenge that 9 Bartlett Court has the requisite frontage on a street, but rather argue that both zoning decisions were wrong because 9 Bartlett Court had merged with the adjacent 11 Bartlett Court because 11 Bartlett Court had insufficient frontage. It is unclear, therefore, that when applying for the special permit for 9 Bartlett Court, Petersen and Lieberman were required to anticipate the trustees' argument and submit plans that demonstrated 11 Bartlett Court's compliance with the zoning bylaw. In any event, while the 2021 ANR plan may indeed be ambiguous with respect to whether 11 Bartlett Court has sufficient frontage, the judge made detailed findings on this issue.

The trustees have not shown that it was error for the judge to consider extrinsic evidence -- evidence outside the application materials -- of the existence of frontage on a street. See Vetter v. Zoning Bd. of Appeal of Attleboro, 330 Mass. 628, 630 (1953) (rejecting construction of merger provision of local ordinance where "plaintiff's argument would require us to construe the word lot . . . as referring to a lot which corresponded with some 'lot' shown on a plan in the assessors' office rather than to the lot as it actually existed upon the surface of the earth. We find nothing in this record

12

to suggest that lots under the ordinance were to be determined by assessors' plans or assessments or according to sources of title"). Given that the issue of the technical accuracy of the 2021 ANR plan was not before the judge, we similarly conclude that the judge properly considered extrinsic evidence on whether lot B2 and lot C1 each currently in fact have a minimum of one hundred feet of frontage on Bartlett Court or the extension -- regardless of the ambiguity on the 2021 ANR plan.[16]

The judge noted that the drafter of the 2021 ANR plan admitted to having erred by not depicting Bartlett Court as extending beyond the end of the finished pavement. The judge also relied on a 2024 plan by the same surveyor showing the length, width, and composition of Bartlett Court and the extension as they exist on the ground today. In addition, the judge considered the history of Bartlett Court extension. The judge found that aerial photographs from 1954, 1966, 1981, and 1990 show a dirt or gravel road extending from Spray Avenue to a point past the residence on lot C. The extension is also shown on a 2000 plan in the same location and Steven Rosenthal testified that it existed and was made of dirt or gravel. The

---

[16] To the extent the trustees contend that the ANR plan determines zoning compliance, our cases have concluded otherwise. See Bruno, 93 Mass. App. Ct. at 53 (where ANR plan created nonconforming lots, conveyance triggered enforcement claim).

13

judge further found that the town adopted the subdivision control law in 1997, and, relying particularly on the evidence of its existence around 2000, concluded that the Bartlett Court extension existed in 1997 and constituted a "street" under the zoning bylaw. We discern no error in the judge's analysis and conclusion.

Having concluded that Bartlett Court extension was a street in existence on the date the subdivision control law was adopted, the judge considered whether, as the board of appeals concluded, it has "sufficient width and suitable grades, and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon and served thereby, and for the installation of municipal services to serve such land and building erected or to be erected thereon." The judge noted that of the one hundred feet of required frontage, forty-four feet is paved, the width is thirteen to fourteen feet and the grade is relatively flat. Beyond the paved section is 59.5 feet of "'concrete mesh' paver blocks" designed to "accommodate heavy vehicle loadings or passenger type of loadings." The judge ultimately concluded, therefore, that both lot B and lot C have adequate frontage on a street and the lots have not merged.

On appeal, the trustees do not refute the judge's findings. Rather, in addition to relying on the purported technical flaws

14

in the 2021 ANR plan, they argue that the judge ignored that the local bylaw requires that a way be "constructed," and quote Shea v. Board of Appeals of Lexington, 35 Mass. App. Ct. 519, 523 (1993), for the proposition that "if the purpose of the by-law is not to be undermined," the bylaw must be read "to require an actual way, constructed on the ground, not just a depiction of a way on a plan."  The judge's findings as to the flat grade and mesh pavers installed on Bartlett Court extension amply belie the suggestion that the extension is simply a paper street, and support the conclusion that it has been "constructed."  And, even if at the time the planning board reviewed the special permit application the pavers had not yet been installed, Petersen's and Lieberman's expert testified that dirt roads are plentiful in the Commonwealth and also provide adequate access. We cannot say on this record, therefore, that the board of appeals' conclusion that the extension is a street that provides adequate access was error.

The trustees next suggest that the extension is not a street; it is functionally a driveway.  They note testimony that there is no technical difference between private ways and driveways; however, they fail to point to any portion of the zoning bylaw that would compel the conclusion that the extension may not be considered a street.  Our own review does not reveal

15

a separate definition of "driveway."[17]  Thus, we discern no

error.

In short, we agree with the Land Court judge that any

technical deficiencies in the 2021 ANR plan are not controlling

when considering an argument that 9 Bartlett Court, the subject

of the special permit application, has merged with adjoining

land at 11 Bartlett Court.  Having properly examined the history

of the property and the existing conditions on the ground and

made findings of fact that are consistent with the evidence, the

judge reasonably concluded that two adjacent lots each have the

requisite one hundred feet of frontage on a street, such that

the merger doctrine does not apply, and properly affirmed the

---

[17] The subdivision control regulations -- to the extent they
have application to the issues before us where the extension is
a street that existed prior to the town's adoption of the
subdivision control law -- classifies "street" in four
categories, the final being a "Lane," defined as "a street
which, in the opinion of the Board, is being used or will be
used primarily to provide access to a small number of abutting
lots, carrying 150 (or fewer) vehicle trips per day."

decisions of the planning board and the board of appeals.

_Judgments affirmed_.

By the Court (Grant,
Brennan & Smyth, JJ.[18]),

Clerk

Entered:   January 21, 2026.

---

[18] The panelists are listed in order of seniority.