NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-174                                          Appeals Court


WILLIAM A. BRUNO, trustee,[1] & another[2] vs.  ZONING BOARD OF
APPEALS OF TISBURY & others.[3]


No. 17-P-174.

Suffolk.      November 9, 2017. - March 19, 2018.

Present:  Meade, Shin, & Ditkoff, JJ.


Subdivision Control, Approval not required, Zoning requirements.
    Zoning, Enforcement, Nonconforming use or structure.
    Practice, Civil, Summary judgment, Zoning appeal, Statute
    of limitations.  Limitations, Statute of.



    Civil action commenced in the Land Court Department on May
2, 2014.

    The case was heard by Gordon H. Piper, J., on motions for
summary judgment.

_____

    [1] Of the W.A.B. Realty Trust and the L.B. Realty Trust.

    [2] Lynne Bruno, trustee of the W.A.B. Realty Trust and the
L.B. Realty Trust.

    [3] Jeffrey Kristal, Anthony Holand, Susan Fairbanks, Michael
Ciancio, Neal Stiller, Frank Piccione, and John Guadagno, as
members of the zoning board of appeals of Tisbury; and Samuel
Goethals and Mary Goethals, trustees of the Goethals Family
Trust.

Douglas A. Troyer for the plaintiffs.
Howard M. Miller for Samuel Goethals & another.
Jonathan M. Silverstein for Zoning Board of Appeals of Tisbury.

DITKOFF, J.  The plaintiffs, William A. Bruno and Lynne Bruno, as trustees of the W.A.B. Realty Trust and L.B. Realty Trust (Brunos), appeal from a Land Court judgment upholding the denial by the zoning board of appeals of Tisbury (board) of the Brunos' request to enforce the zoning law against the defendants, Samuel Goethals and Mary Goethals, as trustees of the Goethals Family Trust (Goethals).  The Goethals subdivided a piece of land on which there was a primary house and a guesthouse, separating the two structures and leaving the guesthouse on an undersized lot.  We conclude that the ten-year statute of limitations under G. L. c. 40A, § 7 -- which governs actions to compel the removal of a structure because of alleged zoning violations -- commenced at the time that the lot containing the primary house was conveyed, rather than at the endorsement of the approval not required (ANR) subdivision plan.  As the Land Court judge concluded otherwise, we reverse that portion of the judgment and remand for further proceedings, while affirming the judge's denial of the Brunos' request for attorney's fees and costs from the members of the board.

1.  Background.  The Goethals and Brunos separately own adjoining real property parcels, held in trust, located on Goethals Way in the town of Tisbury.  The Goethals' property (Lot 1) and the Brunos' property (Lot 2) formerly comprised a single parcel (original lot), first purchased by the Goethals family in or around the 1930's.  The original lot contained a single-family dwelling when the Goethals purchased it, and they added a separate garage sometime prior to 1960.

In 1978, the planning board of Tisbury granted the Goethals a special permit under the town zoning by-law (by-law) to build a detached guesthouse on the original lot.  As authorized by the special permit, the Goethals constructed a guesthouse structure of approximately 850 square feet in place of the garage.  In or around 1986, the Goethals performed additional work on the guesthouse, including the addition of two bedrooms and increasing the total area to 1,710 square feet.  There is no evidence that the 1986 addition was authorized by a building permit.

On December 19, 2001, the planning board endorsed the Goethals' plan to subdivide the original lot into two parcels, Lot 1 and Lot 2, with approval not required (ANR) under G. L. c. 41, § 81L.  Under the subdivision plan, Lot 1 measured approximately 12,350 square feet and contained the guesthouse, and Lot 2 measured approximately 32,200 square feet and

contained the original single-family dwelling.  Both lots are in Tisbury's R-25 zoning district, which requires a minimum lot size of 25,000 square feet for a single-family dwelling, well in excess of the square feet assigned to Lot 1.[4]

Lot 1 and Lot 2 remained in common ownership following the ANR subdivision, until the Goethals conveyed Lot 2 to the Brunos by deed dated August 17, 2005, and recorded two weeks later. Under the terms of the conveyance, the Goethals reserved easements for their family and guests granting access across a portion of the Brunos' property to use the beach.  After the 2005 conveyance, the Goethals maintained ownership of Lot 1.

In 2010, the Goethals converted a television room in the former guesthouse into a bedroom, bringing the number of bedrooms to five.  The Goethals did not seek any permits or authorization for this work.  The lots are subject to the "Coastal District and Barrier Beach Regulations" (coastal district regulations) incorporated into the by-law, which limit

---

[4] As the moniker suggests, an ANR endorsement expresses no view of town authorities as to the zoning compliance of any lot proposed by a subdivision plan.  Palitz v. Zoning Bd. of Appeals of Tisbury, 470 Mass. 795, 807 (2015), quoting from Cornell v. Board of Appeals of Dracut, 453 Mass. 888, 892 (2009) ("ANR indorsement serves merely to permit the plan to be recorded . . . and is not an attestation of compliance with zoning requirements").

dwellings to three bedrooms and a maximum occupancy of five persons.

Since 2006, the Goethals have rented or attempted to rent their house for up to eight weeks each July and August.  They have advertised it sometimes as a three-bedroom vacation home and sometimes as a five-bedroom vacation home sleeping up to ten guests.

Apparently displeased with the guesthouse expansion and rental use, the Brunos complained to the Goethals and town officials concerning the zoning nonconformities and violations. In September, 2013, the Brunos submitted a letter to the town zoning enforcement officer, requesting enforcement of the by-law prohibiting the presence of a single-family house on an undersized lot.[5]  On January 8, 2014, the town zoning enforcement officer denied the Brunos' request on the basis that the six-year statute of limitations under G. L. c. 40A, § 7, barred enforcement.  The Brunos appealed the decision to the board, which unanimously affirmed on the same statute of limitations grounds, while finding the house in nonconformity with the by-law.

---

[5] The Brunos raise no claim that the 1986 addition is actionable at this late date.

On May 2, 2014, the Brunos filed a complaint and later an amended complaint in the Land Court pursuant to G. L. c. 40A, §§ 7 and 17, to annul the board's determination, compel the removal of the Goethals' house, and award them attorney's fees and costs.[6]  On the parties' cross motions for summary judgment, the judge concluded that the ten-year statute of limitations in § 7, rather than the six-year statute of limitations in the same section, applied.[7]  The judge then determined that the by-law violations commenced in 2001 with the ANR subdivision endorsement -- not the 2005 conveyance and thus that the enforcement action was barred by the statute of limitations.  We reverse.

2.  <u>Standard of review</u>.  We review de novo a Land Court judge's decision granting summary judgment to a zoning board of appeals.  <u>Palitz</u> v. <u>Zoning Bd. of Appeals of Tisbury</u>, 470 Mass. 795, 799 (2015).  On appeal, the issue "is whether, viewing the evidence in the light most favorable to the nonmoving party, all

---

[6] The Brunos assert that they recorded their action in the registry of deeds on April 30, 2015.

[7] The judge also found the Goethals' house in violation of the by-law and the coastal district regulations.  The judge correctly noted that the Goethals agreed to perform the necessary work to conform their dwelling to the coastal district regulations once this dispute is resolved.  The Goethals reaffirmed this agreement at oral argument before this court. We see no need to address this issue further.

material facts have been established and the moving party is entitled to judgment as a matter of law."  Molina v. State Garden, Inc., 88 Mass. App. Ct. 173, 177 (2015), quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

  3.  Statute of limitations.  a.  Enforcement actions. General Laws c. 40A, § 7, as appearing in St. 1989, c. 341, § 21,[8] provides a statute of limitations for any enforcement action seeking "to compel the removal, alteration, or relocation of any structure" because of a zoning violation.  That is the case here; the Brunos demand nothing less than the removal of the Goethals' house.

  The statute requires such enforcement actions be brought and recorded either within six or ten years of "the commencement of the alleged violation," depending on the nature of the violation and the manner in which it arises.  Under § 7, the six-year limitation period applies where the "real property has been improved and used in accordance with the terms of the original building permit."  G. L. c. 40A, § 7.  This provision bars actions against alleged violations to (1) terminate, limit, or modify the use allowed by a building permit; or (2) remove,

---

  [8] Section 7 was amended in 2016.  See St. 2016, c. 184, § 1. The amendment took effect after the entry of judgment appealed from here, and did not materially alter the statutory language discussed infra.

alter, or relocate a structure authorized by a building permit and being used in accordance with that building permit. See Moreis v. Board of Appeals of Oak Bluffs, 62 Mass. App. Ct. 53, 58-60 (2004). In contrast, the ten-year statute of limitations does not depend on the issuance of a building permit. See id. at 60. Rather, it bars actions intended "to compel the removal, alteration, or relocation of any structure" on the basis of a zoning violation after ten years, regardless of how the structure came to be. See Bruno v. Board of Appeals of Wrentham, 62 Mass. App. Ct. 527, 535 n.14 (2004), citing Lord v. Zoning Bd. of Appeals of Somerset, 30 Mass. App. Ct. 226, 227-228 (1991).

The Brunos contend that they are challenging the use of the Goethals' house as a residence instead of as a guesthouse, and thus their action is not subject to any statute of limitations.[9] As the judge observed, at least since 2005, there "is, and has been, a single-family residence on Lot 1. And a single-family residential use is allowed of right in this zoning district." We agree with the judge that the use of the Goethals' house "constitutes a single family residential use of that lot," and,

_____

[9] This would be so because the ten-year limitations period does not apply to actions alleging only use violations and because the six-year limitations period applies only where, unlike here, the action is challenging a use (or structure) authorized by a building permit.

therefore, "the current use is a lawful one."  See <u>Lord</u>, 30
Mass. App. Ct. at 227-228; <u>Moreis</u>, 62 Mass. App. Ct. at 57-59.

As the judge stated, the Brunos request "nothing less" than
the removal of the house, bringing their suit squarely within
the purview of the statute of limitations in § 7.  To whatever
extent the Brunos request in the alternative an injunction
against all uses of the house, we see no substantive difference
(from the perspective of the statute of limitations) between the
removal of a structure and the total preclusion of its use for
any purpose.  The latter would inevitably require the eventual
removal of the structure all the same.  Either way, as the judge
correctly discerned, the Brunos are challenging "structural
violations" subject to the ten-year statute of limitations.
<u>Bruno</u>, 62 Mass. App. Ct. at 535 n.14.  See <u>Lord</u>, 30 Mass. App.
Ct. at 228 (ten-year limitations period protects structural
alterations made without building permit).

b.  <u>Commencement of violation</u>.  "It is well settled that
'[u]nder the common-law merger doctrine, when adjacent
nonconforming lots come into common ownership, they are normally
merged and treated as a single lot for zoning purposes.'"
<u>Timperio</u> v. <u>Zoning Bd. of Appeals of Weston</u>, 84 Mass. App. Ct.
151, 155 (2013), quoting from <u>Hoffman</u> v. <u>Board of Zoning Appeal</u>
<u>of Cambridge</u>, 74 Mass. App. Ct. 804, 811 (2009).  The merger
doctrine applies in such circumstances unless "clear language"

in the zoning ordinance states otherwise, <u>Dwyer</u> v. <u>Gallo</u>, 73 Mass. App. Ct. 292, 298 (2008), as "[t]he 'usual construction of the word "lot" in a zoning context ignores the manner in which the components of a total given area have been assembled and concentrates instead on the question of whether the sum of the components meets the requirements of the by-law.'" <u>Carabetta</u> v. <u>Board of Appeals of Truro</u>, 73 Mass. App. Ct. 266, 270-271 (2008), quoting from <u>Asack</u> v. <u>Board of Appeals of Westwood</u>, 47 Mass. App. Ct. 733, 736 (1999).

In this case, Lot 1 as proposed in the ANR subdivision in 2001 was in nonconformity with the by-law.  Taken together, however, Lots 1 and 2 formed a single conforming lot under the Goethals' common ownership.  The by-law does not specify anything to the contrary, and the merger doctrine accordingly applies here; Lot 1 and Lot 2 must therefore be viewed as a single conforming lot until the 2005 conveyance, regardless of the prior ANR subdivision.

Zoning violations created by ANR subdivisions, moreover, do not commence for enforcement purposes until the subsequent conveyance of a lot.  "Zoning violations arising from nonconformities may be stayed by the doctrine of merger, 'which treats adjacent lots currently in common ownership as a single lot for zoning purposes so as to minimize nonconformities.'" <u>Palitz</u>, 470 Mass. at 800, quoting from <u>Marinelli</u> v. <u>Board of</u>

Appeals of Stoughton, 440 Mass. 255, 261 (2003). As a result, even though the ANR subdivision created nonconforming lots, the Tisbury zoning enforcement officer could not have pursued an enforcement action against the Goethals until the time of the conveyance. See Palitz, 470 Mass. at 800 ("absent a variance, alienation of one of the nonconforming properties will result in realization of the zoning violations by the new owner" [emphasis supplied]). See also Carabetta, 73 Mass. App. Ct. at 271 n.10 (conveyance severing common ownership "demerged" adjacent lots, and resulted in purchase of nonconforming lot subject to enforcement).

The statute of limitations in § 7 applies as equally to town enforcement actions as it does to private lawsuits. If we construed the statute of limitations as commencing upon the ANR endorsement, any property owner could obtain an ANR endorsement for a subdivision plan and then wait ten years to separate the lots, thus creating nonconforming lots without any opportunity for the town to enforce its zoning by-law. Our construction, by contrast, allows the town ten years after the lots are separated to enforce its zoning by-law, consistent with the Legislature's intent.

The 2001 ANR subdivision did not create an enforceable zoning violation; such a violation was created only when the

Goethals conveyed Lot 2 to the Brunos in August, 2005.[10]  Under § 7, the Brunos were required to commence and record their action within ten years of that date.  The Brunos brought their action on May 2, 2014.  If they effectively recorded their action on April 30, 2015, as they claim,[11] their claims are not barred by § 7.  Accordingly, we reverse and remand for further proceedings.[12]

4.  Attorney's fees and costs.  There is no basis for the assessment of attorney's fees and costs against the board members in this case.  General Laws c. 40A, § 17, inserted by St. 1975, c. 808, § 3, provides that "[c]osts shall not be allowed against the board or special permit granting authority unless it shall appear to the court that the board or special permit granting authority in making the decision appealed from

---

[10] Because it is unnecessary for our result, we leave unresolved the issue whether a zoning violation, realized upon conveyance, commences at the date of the deed or at the time of its recording.

[11] Whether the commencement of the suit was properly recorded is disputed and must be determined by the Land Court on remand.

[12] Of course, even if the recording issue is decided favorably to the Brunos, removal orders "do not necessarily follow every determination of a zoning violation."  Sheppard v. Zoning Bd. of Appeal of Boston, 81 Mass. App. Ct. 394, 405 (2012).  Rather, a court may consider equitable factors and the potential availability of alternative remedies.  See Steamboat Realty, LLC v. Zoning Bd. of Appeal of Boston, 70 Mass. App. Ct. 601, 606 (2007).

acted with gross negligence, in bad faith or with malice." Generally, there can be no finding of bad faith in the absence of evidence of improper motives, harassment, or causing needless delay or unnecessary cost. Sheehan v. Zoning Bd. of Appeals of Plymouth, 65 Mass. App. Ct. 52, 61-62 (2005).

Here, the record does not show any harassment or delay, nor negligence of any kind on the part of the board. The Brunos' allegations of bad faith and gross negligence are without merit, if not frivolous, and the judge properly denied their request under § 17.

5. Conclusion. The ten-year statute of limitations under G. L. c. 40A, § 7, commenced no earlier than August 17, 2005. So much of the judgment granting the Goethals' motion for summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. So much of the judgment as denies attorney's fees and costs against the board members under G. L. c. 40A, § 17, is affirmed.

So ordered.