DUDLEY vs. HENEY, MISC 18-000538

































 
 DAN DUDLEY, Plaintiff, v. DANIEL HENEY, PAMELA HOLMES, MICHAEL FITZPATRICK, SEAN HOLLAND, AND JOHN BOMBARA, as they are members of the Zoning Board of Appeals of the TOWN OF DOUGLAS, and LARRY LENCH, as he is the Building Commissioner of the TOWN OF DOUGLAS, Defendants
 MISC 18-000538 
 SEPTEMBER 10, 2021
WORCESTER, ss.
ROBERTS, J.
MEMORANDUM OF DECISION














 INTRODUCTION 





 Plaintiff Dan Dudley ("Mr. Dudley"), the owner of property located at 160 Wallis Street, Douglas, Massachusetts ("the Property"), commenced this G. L. c. 40A, § 17, zoning appeal on October 16, 2018 with the filing of a complaint against defendants Daniel Heney, Pamela Holmes, Michael Fitzpatrick, Sean Holland and John Bombara, as members of the town of Douglas ("the Town") zoning board of appeals ("the ZBA"), and Larry Lench, the building commissioner for the Town ("the Commissioner"). Mr. Dudley appeals from the October 4, 2018 denial of Mr. Dudley's appeal of the Commissioner's June 1, 2018 and June 15, 2018 enforcement orders ("Enforcement Orders") [Note 1] regarding two accessory buildings (sheds) located on the Property. 





 A pre-trial conference was held on June 29, 2021, at which counsel confirmed (1) that the two fact issues for trial were (a) when the two sheds at issue were put in place on the Property and (b) whether the Town complied with the requirements of G. L. c. 40A, § 7, and (2) that the sole legal issue was whether the Enforcement Orders constituted an "action suit or proceeding" within the context of that statute. A one-day trial was held on July 14, 2021 at which Mr. Dudley was the sole witness. At the commencement of trial, counsel for the ZBA and the Commissioner stipulated that one of the sheds in dispute (the most southerly located, hereinafter "the South Shed") had been in place for longer than ten years, leaving the more northerly shed ("the North Shed") at issue. Sixteen exhibits were admitted in evidence. Mr. Dudley's post-trial brief was filed on July 30, 2021 and the ZBA's and the Commissioner's post-trial brief was filed on August 13, 2021. Thereafter, at the request of the court, the parties supplemented the trial record with Appendix A, Schedule Of Use Regulations, and Appendix B, Dimensional Regulations, of the Town's Zoning By-law ("ZBL"), which were marked as Exhibits 17 and 18 respectively. 





 For the reasons set forth below, this court finds that the North Shed and the South Shed, having existed in their current locations for more than ten years, are legally nonconforming structures pursuant to G. L. c. 40A, § 7. Accordingly, the Decision will be ANNULLED and this matter REMANDED to the ZBA with instructions to grant Mr. Dudley's June 28, 2018 application for relief from the Commissioner's Enforcement Orders ("the Application"). 





FINDINGS OF FACT 





 Based on the pleadings, the admitted exhibits, the testimony at trial, as well as my assessment of the credibility, weight and inferences to be drawn therefrom, I find the following facts, reserving certain details for the discussion of specific legal issues. 





 1. Mr. Dudley acquired an interest in the Property by deed of Mary J. Dudley to herself and Mr. Dudley as joint tenants dated July 2, 1985 and recorded with the Worcester District Registry of Deeds at Book 8819, Page 111. Trial Exhibits ("TE") 1 ¶ b; 2.





 2. The Property is shown on a plan entitled "Plan Of Land In Douglas, Mass. Surveyed For Dan Dudley Scale: 1"=40' August 21, 1987 By Andrews Survey & Engineering, Inc. Uxbridge, Mass." TE 1 ¶ c; 3. 





 3. The Property is located in the Rural Agricultural (RA) zoning district. See TE 8. 





 4. In addition to the Property, Mr. Dudley also occupies abutting property as shown on a plan entitled "Plan of Land #160 Wallis Street Douglas, MA 01570 Prepared for: Dan Dudley 160 Wallis Street, Douglas, MA 01570 November 19, 2018 1" = 30' Guerriere & Halnon, Inc. Engineering & Land Surveying 1029 Providence Rd. Whitinsville, MA 01588" ("the 2018 Plan"). TE 1 ¶ d; 13. 





 5. The 2018 Plan shows two sheds, the more northerly of which, the North Shed, extends over the boundary line of the Property onto the adjacent property by .7 feet at its northwesterly corner and by 1.4 feet at its southwesterly corner. TE 13. 





 6. The North Shed was purchased by Mr. Dudley from Bay State Structures on October 26, 2009. TE 1 ¶ h; 5. 





 7. The North Shed's dimensions are twelve feet by sixteen feet, or one hundred ninety-two square feet. TE 5. 





 8. Bay State Structures prepared the ground where the North Shed was to be installed before it was delivered. Testimony of Mr. Dudley ("Dudley Test."). 





 9. Mr. Dudley chose the location where the North Shed was to be installed. Dudley Test. 





 10. The North Shed was installed at the Property before Thanksgiving 2009. Dudley Test. 





 11. On June 1, 2018, the Commissioner sent a letter to Mr. Dudley in which he stated: 





 It has come to the attention of the building department that you have a number of accessory buildings (sheds) at your home located at 160 Wallis Street. Your land is in the Rural Agricultural (RA) zoning district and has 1.122 acres of land. The parcel is also identified on accessor's [sic] page as parcel 19 on map #158. 





 The Douglas zoning bylaws require a building permit for sheds or other buildings over 120 sq. ft. All accessory structures must also comply with the zoning setback, which in the RA zone is 50 feet from the front, 25 feet from the sides and rear lot lines. 





 The Building department does not have any permits on file for your out buildings. 





 Please contact me at the building department within 7 days, so that we may discuss this now to best resolve this issue. 





 TE 1 ¶k; 6. 





 12. By letter dated June 6, 2018, counsel for Mr. Dudley responded by noting, among other things, that "the buildings have been in their current locations for well in excess of ten (10) years" and that, by virtue of the ten year statute of repose contained in G. L. c. 40A, § 7, "Mr. Dudley believes that his buildings are 'grandfathered' and no longer subject to enforcement action." TE 7. 





 13. By letter dated June 15, 2018, the Commissioner responded, stating, among other things, that the burden of proof fell on Mr. Dudley to establish that his buildings had the benefit of G. L. c. 40A, § 7; reiterating the requirements of the Town's zoning bylaws with respect to accessory structures; and quoting the Town's zoning bylaw provisions regarding non-conforming structures, variances, the Commissioner's obligation to enforce the zoning bylaws and the penalties for violation of the zoning bylaws. TE 1 ¶ k; 8. 





 14. On or about June 28, 2018, Mr. Dudley filed the Application, which was an appeal from the Commissioner's Enforcement Orders, with the ZBA. TE 1 ¶ 1; 9. 





 15. In the Application, Mr. Dudley stated: "Applicant is appealing from what appear to be enforcement orders dated June 1, 2018 and June 15, 2018, copies of which are attached. The applicant maintains that any structures subject to the enforcement orders have existed for more than 10 years and that enforcement is therefore precluded by provisions of M.G.L. c. 40A, Sec. 7." TE 9. 





 16. On October 4, 2018, the ZBA denied Mr. Dudley's Application ("the Decision") and made the following findings: (a) "that there are two accessory structures on the lot that are in violation of the rear set back of 25 feet;" (b) "that no building permits were issued for the structures;" (c) that "Attorney Lane admitted that 'several buildings' do not meet the setback requirements of the Zoning Bylaws;" (d) that, despite the request of the ZBA, no plot plan of the Property was provided; and (e) that "no evidence was provided that the accessory structures on the property have existed for more than 10 years." TE 1 ¶m; 11. 





 17. Mr. Dudley filed this action on October 16, 2018. 





 18. There is no evidence in the record of any action, suit or proceeding intended to compel the removal, alteration or relocation of the North Shed commenced within ten years of November 2009, unless the Enforcement Orders and/or the Decision are deemed to be so. 





 19. No notice of suit or other proceeding to compel removal, alteration or relocation of the North Shed has been recorded with the Registry. TE 1 ¶ o. 





Relevant Provisions Of The ZBL 





 The Town's ZBL defines "accessory building" as "[a] subordinate building located on the same lot as the main, or principal building or principal use, the use of which is customarily incidental to that of the principal building or use of the land." TE 14, ZBL sec. 10.0. Appendix B to the ZBL sets forth the Town's dimensional regulations. In the RA zoning district, the side yard and rear yard setbacks are both twenty-five feet. TE 18. 





DISCUSSION 





Standard of Review 





 As described by the Supreme Judicial Court in E & J Props., LLC v. Medas, 464 Mass. 1018 , 1019 (2013), quoting Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeals of Billerica, 454 Mass. 374 , 381 (2009), which in turn quotes Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555 , 558 (1954), "[j]udicial review of a zoning board's decision pursuant to G. L. c. 40A, § 17, 'involves a peculiar combination of de novo and deferential analyses.'" In Shirley Wayside Ltd. P'ship v. Board of Appeals of Shirley, 461 Mass. 469 , 474-475 (2012), the Supreme Judicial Court described the process of the trial court's review as follows: 





 The trial judge makes his own findings of facts and need not give weight to those the board has found. See G. L. c. 40A § 17; Pendergast v. Board of Appeals of Barnstable, supra at 558-559. The judge then "determines the content and meaning of statutes and by-laws and ... decides whether the board has chosen from those sources the proper criteria and standards to use in deciding to grant or to deny the variance or special permit application" (citations omitted). Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68 , 73-74, 794 N.E.2d 1198 (2003). ... After determining the facts and clarifying the appropriate legal standards, the judge determines whether the board has applied those standards in an "unreasonable, whimsical, capricious or arbitrary" manner. Wendy's, supra at 382, quoting Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478 , 487, 709 N.E.2d 798 (1999). 





This review "typically requires two principal inquiries, one of which involves an almost purely legal analysis and the other of which involves a highly deferential bow to local control over community planning." Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68 , 73 (2003). 





Application To This Case 





 As instructed by Britton, having made findings of fact, this court's next inquiry is whether the ZBA's decision was based "on a standard, criterion or consideration not permitted by the applicable statutes or by-laws." 59 Mass. App. Ct. at 73. The statutes relevant to that review are G. L. c. 40A, §§ 7, 8 and 15. 





 G. L. c. 40A, § 7, contains three provisions of relevance here. First, the statute provides that "[t]he inspector of buildings, building commissioner or local inspector, or if there are none, in a town, the board of selectmen, or person or board designated by local ordinance or by-law, shall be charged with the enforcement of the zoning ordinance or by-law." G. L. c. 40A, § 7 (first par.). Second, the statute provides, at G. L. C. 40A, § 7 (second par.) in pertinent part: 





 No criminal or civil action intended to compel the removal, alteration or relocation of a structure by reason of an alleged violation of this chapter or of an ordinance or by-law adopted under this chapter or the conditions of a variance or special permit shall be maintained unless the action, suit or proceeding is commenced and notice of the action, suit or proceeding is recorded in the registry of deeds for each county or district in which the land lies or, in the case of registered land, the notice is filed in the registry district in which the land lies within 10 years of the commencement of the alleged violation. 





As noted in Bruno v. Zoning Bd. of Appeals of Tisbury, 93 Mass. App. Ct. 48 , 52 (2018) (citations omitted), "the ten-year statute of limitations does not depend on the issuance of a building permit. Rather, it bars actions intended 'to compel the removal, alteration, or relocation of any structure' on the basis of a zoning violation after ten years, regardless of how the structure came to be." And, third, G. L. c. 40A, § 7 (third par.) (emphasis added), provides: 





 If real property has been improved by the erection or alteration of 1 or more structures and the structures or alterations have been in existence for a period of at least 10 years and no notice of an action, suit or proceeding as to an alleged violation of this chapter or of an ordinance or by-law adopted under this chapter has been recorded in the registry of deeds for the county or district in which the real estate is located or, in the case of registered land, has been filed in the registry district in which the land is located within a period of 10 years from the date the structures were erected, then the structures shall be deemed, for zoning purposes, to be legally non-conforming structures subject to section 6 and any local ordinance or by-law relating to non-conforming structures. 





 G. L. c. 40A, § 8, provides in pertinent part that "[a]n appeal to the permit granting authority as the zoning ordinance or by-law may provide, may be taken ... by any person ... aggrieved by an order or decision of the inspector of buildings, or other administrative official, in violation of any provision of this chapter or any ordinance or by-law adopted thereunder." G. L. c. 40A, § 15, regulates appeals pursuant to § 8 of the statute, and requires that "[t]he petitioner shall file a notice of appeal specifying the grounds thereof" with the town clerk, with a copy thereof including the date and time of filing certified by the town clerk, filed with the officer or board whose decision is being appealed. 





 Here, while perhaps not written in as direct a fashion as it could have been, the Commissioner's June 1, 2018 letter plainly called out the lack of building permits for the accessory buildings on the Property, including the North Shed, and the failure of those accessory buildings to comply with the setback requirements of the ZBL. TE 6. This was within the Commissioner's purview under § 7, which charges him with the enforcement of the ZBL. In response, Mr. Dudley's counsel pointed to § 7's ten year "statute of repose" and the fact that the accessory buildings had been there in excess of that period of time, concluding that "Mr. Dudley believes that his buildings are 'grandfathered' and no longer subject to an enforcement action." TE 7. That triggered the Commissioner's June 15, 2018 letter in which he rejected this view: "The Building department does not have any permits on file for your out buildings, therefore the building [sic] have no grandfathering status." TE 8. Mr. Dudley's recourse, of which he availed himself, was an appeal to the ZBA pursuant to § 8, as he was a "person ... aggrieved by an order or decision of the inspector of buildings, or other administrative official, in violation of any provision of this chapter or any ordinance or by-law adopted thereunder." 





 The ZBA's October 4, 2018 Decision, insofar as it relates to the North Shed, was based on solid findings of fact, also found by this court de novo, that the North Shed violates the ZBL's setback requirement, that it was installed without a building permit, and that no evidence had been provided that the North Shed had existed for more than ten years as of the time of the Decision. TE 11. In fact, as the evidence admitted at trial established, the North Shed was not installed until November 2009, and so it had been in place approximately nine years, not the requisite ten years established by § 7, as of the date of the Decision. That being said, by the time of trial, the North Shed had been in place for more than ten years. As a result, it had achieved the legally nonconforming status granted by § 7 for structures installed without building permits, the Town not having recorded with the Registry notice of an action, suit or proceeding to compel the removal, alteration, or relocation of the North Shed "within a period of 10 years from the date the structures were erected." G. L. c. 40A, § 7 (third par.). 





 In their post-trial brief, the ZBA and the Commissioner attempt to walk away from the issues established prior to trial, contending that "[t]he Plaintiff's attempt to characterize his appeal as an enforcement action by the Town subject to G.L. c. 40A, 8§ 7 has no basis in law or fact." Defendants' Post-Trial Memorandum at 3. As a result, they contend, without citation to any authority, that § 7 is only available to Mr. Dudley as an affirmative defense and so is not available to him here, the Town not having initiated any criminal or civil proceeding against him. There are at least two difficulties with that argument. First, it is not supported by any authority. Second, the ZBA's and the Commissioner's new argument that § 7 is irrelevant to the issues before this court is not the basis on which this case was tried. Consistent with the argument presented by Mr. Dudley to the Commissioner, TE 7, the reason recited as the basis for Mr. Dudley's appeal to the ZBA, TE 9, and the findings contained in the ZBA's Decision, TE 11, the docket entry entered after the pre-trial conference in this case states, in pertinent part: 





 In 18 MISC 000538, counsel jointly confirmed that there are factual disputes regarding (1) when the existing structures at issue were put in place, and (2) whether the town complied with the requirements of G. L. c. 40A, § 7. Concerning G. L. c. 40A, § 7, the legal dispute is whether the town's enforcement order constituted a "suit or proceeding" within the context of that statute. 





It is too late in the day to take the position that § 7 is not applicable here. And even were one to accept that argument based on § 7 (second par.), it wholly fails to address the determination in § 7 (third par.) that, where ten years have passed without the prescribed steps being taken, "structures shall be deemed, for zoning purposes, to be legally non-conforming structures," regardless of whether the municipality has commenced an enforcement action. 





 The ZBA and the Commissioner further argue that, if § 7 applies, its terms were complied with because the Commissioner's "orders" and the ZBA's Decision occurred within ten years of the installation of the North Shed. Defendants' Post-Trial Memorandum at 8. Even if that is true, however, the Town did not comply with the further requirement of § 7 that notice of those actions be recorded with the Registry within ten years of the commencement of the violation. To that, the ZBA and the Commissioner respond that, as a practical matter, a town would not file an enforcement action or record a notice of the same during the pendency of a separate action by the property owner to determine that owner's rights. The language of § 7, however, is mandatory, and a town that fails to take the steps required by the statute may well find, as is the case here, that it has slept on its rights and, in doing so, lost them. 





 Finally, the ZBA and the Commissioner rely on Cumberland Farms, Inc. v. Zoning Bd. of Appeals of Walpole, 61 Mass. App. Ct. 124 (2004), for the proposition that § 7 is not applicable here. That decision does not help them. There, Cumberland Farms, Inc. ("CFI") received approval to install three 4,000-gallon gasoline tanks to service its gasoline station at its site in 1972, but instead installed three 6,000-gallon tanks. In 1994, CFI was informed that it was required to replace its tanks, as they were more than twenty years old. CFI received a building permit to remove the existing tanks and install one 6,000- and one 12,000-gallon tank, work that it completed immediately. Several weeks thereafter, the town's building inspector ordered CFI to comply with the 1972 approval, which limited CFI to three 4,000-gallon tanks. Similarly, the fire chief advised CFI to limit gasoline storage to 12,000 gallons pending approval of an increase by the zoning board of appeals. Notably, CFI did not appeal the enforcement order by the building inspector. Instead, CFI applied to the zoning board of appeals for two special permits, applications that the board denied in a way that allowed for the continued use of the tanks up to the 12,000-gallon limit but no more. 





 On appeal to this court and then to the Appeals Court, CFI argued that the three 6,000- gallon tanks installed more than twenty years earlier had the protection of § 7. That argument was rejected, among other reasons, because the newly installed tanks had not been in place for ten years and because "there is no civil or criminal action initiated by the town ...; rather, this is a zoning appeal initiated by CFI." 61 Mass. App. Ct. at 128. The matter before this court is distinguishable from Cumberland Farms on both grounds: the North Shed has been in place for more than ten years, and the instant appeal is from Enforcement Orders by the Commissioner upheld by the ZBA, not an application for a special permit or variance by Mr. Dudley. 





CONCLUSION 





 For the foregoing reasons, judgment shall issue consistent with this memorandum of decision ANNULLING the Decision on the grounds that the South Shed [Note 2] and the North Shed are legally nonconforming structures pursuant to G. L. c. 40A, §7, and REMANDING this matter to the ZBA with instructions that it grant Mr. Dudley's Application. 





FOOTNOTES
[Note 1] Although not entirely free from doubt, the parties have treated these two letters as enforcement orders, see Complaint ¶¶ 10-12; Defendants' Post-Trial Memorandum dated August 13, 2021 at 1, and so this court does, too. 

[Note 2] In Defendants' Post-Trial Memorandum at 9, the ZBA and the Commissioner argue that "this appeal ... is not moot as to the first/southerly shed." The ZBA and the Commissioner having conceded at the commencement of the trial that the South Shed had been in its current location for more than ten years, it also has the protection of G. L. c. 40A, § 7 (third par.) for the same reasons that the North Shed is so protected. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.